**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

MARIA POWELL, on behalf of herself and all others similarly situated,

Plaintiff,

**-v.-**

OPAL CAMERA, INC.,

Defendant.

---------------------------------------------------------------x

Docket No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **MARIA POWELL**, ("Plaintiff" or "Ms. Powell,") individually and on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant OPAL CAMERA, INC. ("Opal Camera" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to ensure that its ecommerce Website, www.opalcamera.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff **Maria Powell** is a resident of Bronx County and is permanently disabled due to legal blindness. Ms. Powell suffers from advanced proliferative diabetic retinopathy, a severe and progressive retinal disease recognized as one of the leading causes of permanent vision loss in adults. As documented and confirmed by Dr. Ralph Paternoster, O.D., of Park Professional Eyecare, on February 10, 2026, Ms. Powell's visual impairment meets both federal and New York State criteria for legal blindness. Dr. Paternoster further confirms that Ms. Powell's condition is permanent, incurable, and significantly impairs her ability to visually interpret printed or digital information without assistive technology. Exhibit A

2. Ms. Powell is a proficient user of screen-reading technology and keyboard

navigation, which she relies on to access digital environments independently. Because she cannot visually perceive website content without accessible coding, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and screen-reader-compatible navigation in order to browse, evaluate, and purchase goods online. For blind consumers such as Ms. Powell, screen-reading software is not optional; it is the only means by which they can independently access the internet.

3. In 2026, Ms. Powell was awarded a **$12,500 municipal grant**—with the opportunity for an additional $12,500 to $25,000 in operating funds—from the Office of the Mayor of New York to support the launch of a streaming, blogging, and community-discussion platform for blind and visually impaired individuals. The purpose of this initiative is to create a digital space where blind consumers can share experiences, exchange resources, and engage in moderated discussions with the assistance of a sighted facilitator. To execute this project, Ms. Powell requires high-quality camera equipment and software capable of producing clear, stable, and professional-grade video content.

4. Defendant **Opal Camera, Inc.** markets itself as a cutting-edge technology company offering AI-enhanced, professional-grade camera systems, including the **Opal C1**, the **Opal Tadpole**, and the **Opal Composer** software required to operate its devices. These products are advertised as creator-focused tools designed for streaming, broadcasting, and high-fidelity video capture—precisely the type of equipment Ms. Powell sought to purchase using her grant funds.

5. On **February 11, 2026**, **February 12, 2026**, **March 5, 2026**, and **April 18, 2026**, Ms. Powell attempted to access Defendant's website using screen-reading technology in order to evaluate and purchase the Opal C1 and Opal Tadpole, download the Opal Composer software, and review the Tadpole Comparison Page to understand the differences between Opal's products and competing models. Her objectives were concrete, personal, and directly tied to her grant-funded

project.

6. Despite multiple attempts, Ms. Powell was unable to independently complete any of these tasks due to pervasive accessibility barriers on Defendant's website. Independent audits using SortSite and WAVE revealed missing alternative text, empty buttons, empty links, invalid language attributes, inaccessible PDFs, broken ARIA references, skipped heading levels, autoplaying videos without controls, and more than **175 contrast errors**. These barriers prevented Ms. Powell from accessing essential product information, comparing models, downloading required software, or completing a purchase. Exhibit B

7. Defendant's failure to design, construct, maintain, and operate its highly interactive website in a manner compatible with screen-reading technology denied Ms. Powell equal access to the goods and services it provides to non-disabled customers. As a result, Ms. Powell was unable to use her grant funds for their intended purpose and lost the opportunity to acquire the equipment necessary to launch her community-based initiative.

8. Plaintiff brings this civil action against Defendant **Opal Camera, Inc.** for its violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., and related state and local laws. Plaintiff seeks injunctive relief requiring Defendant to adopt and implement policies, practices, and procedures to ensure that its website becomes and remains accessible to blind and visually impaired individuals. Plaintiff remains genuinely interested in purchasing Defendant's products and intends to return to the website as soon as it is remediated so that she may independently browse, evaluate, and obtain the equipment necessary for her project. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

## JURISDICTION & VENUE

9. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., which prohibits discrimination by places of public accommodation, including those operating commercial websites.

10. This Court has supplemental jurisdiction over Plaintiff's related state and city law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims. All claims arise from a common nucleus of operative fact: Defendant's operation of an inaccessible website that denies blind consumers equal access to its goods, services, and software.

11. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District, accessed Defendant's website from within this District, and personally experienced the discriminatory barriers alleged herein while attempting to evaluate and purchase Defendant's products. Courts in this Circuit consistently hold that venue is proper where the plaintiff encounters the discriminatory denial of access to a website. See Velazquez v. Don Roberto Jewelers, Inc., No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.); see also Romero v. 88 Acres Foods, Inc., 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

12. Defendant is subject to personal jurisdiction in this District because it purposefully avails itself of the privilege of conducting business in New York through its highly interactive commercial website, www.opalcamera.com, which enables consumers to browse products, review technical specifications, download required software, create accounts, and complete purchases. Defendant ships its products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have repeatedly held that operators of nationwide ecommerce platforms are subject to personal jurisdiction in New York when they direct

commercial activity toward New York consumers. See Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); Reed v. 1-800-Flowers.com, Inc., 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

13. The United States Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA makes clear that businesses must ensure that their online services are accessible to individuals with disabilities, including blind and visually impaired users who rely on screen-reading technology.

14. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

15. **Plaintiff Maria Powell** is, and at all relevant times was, a resident of Bronx County, New York. Ms. Powell is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her treating optometrist, Ms. Powell suffers from advanced proliferative diabetic retinopathy, a permanent and incurable condition that severely restricts her visual acuity and visual fields and requires the use of screen-reading software to access digital content independently.

16. In 2026, Ms. Powell was awarded a **$12,500 municipal grant**, with the opportunity for an additional $12,500 to $25,000 in operating funds, to support the launch of a streaming, blogging, and community-discussion platform for blind and visually impaired individuals. To execute this project, Ms. Powell requires high-quality camera equipment and software capable of producing professional-grade video content. Defendant's products—including the Opal C1, Opal

Tadpole, and Opal Composer software—were among the specific tools she sought to evaluate and purchase.

17. **Defendant Opal Camera, Inc.** is a corporation organized under the laws of the State of California, with its principal place of business located at 143 2nd Street, 4th Floor, San Francisco, California 94105. Defendant owns, operates, and controls the commercial website www.opalcamera.com, through which it markets, displays, and sells AI-enhanced camera equipment and related software to consumers throughout the United States, including residents of New York.

18. Defendant transacts substantial business within the State of New York and within this District by offering its products and software to New York consumers, shipping products directly to New York addresses, and deriving significant revenue from New York-based transactions. Defendant's website is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7), because it is a service, sales, and software-distribution platform offered to the general public.

19. At all relevant times, Defendant was responsible for designing, constructing, maintaining, and operating its website in a manner that complies with federal, state, and local disability-rights laws. Defendant failed to do so, resulting in the denial of full and equal access to Plaintiff and other blind and visually impaired consumers.

20. Ms. Powell is a proficient user of screen-reading technology, including NVDA, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Powell depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software. When websites lack meaningful alternative text, proper ARIA labeling, accessible navigation, or programmatically determinable

structure, blind users such as Ms. Powell are denied the ability to browse, evaluate, and purchase goods independently.

## STATEMENT OF FACTS

21. Plaintiff **Maria Powell** is a legally blind consumer who relies exclusively on screen-reading software and keyboard navigation to access digital content. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Powell depends on businesses to design and maintain their websites in a manner that is compatible with screen-reading technology. When websites lack meaningful alternative text, proper ARIA labeling, accessible navigation, or programmatically determinable structure, blind users are denied the ability to browse, evaluate, and purchase goods independently.

22. Ms. Powell suffers from advanced proliferative diabetic retinopathy, a permanent and incurable retinal disease that severely restricts her visual acuity and visual fields. As confirmed by her treating optometrist, Dr. Ralph Paternoster, O.D., Ms. Powell meets both federal and New York State criteria for legal blindness. Her condition significantly impairs her ability to visually interpret digital information without assistive technology.

23. In 2026, Ms. Powell was awarded a **$12,500 municipal grant**, with the opportunity for an additional $12,500 to $25,000 in operating funds, to support the launch of a streaming, blogging, and community-discussion platform for blind and visually impaired individuals. The project requires high-quality camera equipment and software capable of producing clear, stable, and professional-grade video content. Defendant's products—including the **Opal C1**, **Opal Tadpole**, and **Opal Composer** software—were among the specific tools she sought to evaluate and purchase.

24. Ms. Powell's intention to launch a streaming and community-discussion platform is grounded not only in her lived experience as a blind consumer, but also in her professional training. Prior to the progression of her visual impairment, Ms. Powell earned a **degree in digital media**

**production with a concentration in videography**, where she received formal instruction in video editing, lighting, audio capture, and content creation. Although her vision loss now requires the use of accessible technology, Ms. Powell continues to apply these skills using screen-reading software and adaptive workflows. Her academic and technical background gives her a sophisticated understanding of the equipment and software necessary to produce high-quality video content and underscores the legitimacy, seriousness, and feasibility of her grant-funded project.

25. Defendant **Opal Camera, Inc.** markets itself as a cutting-edge technology company offering AI-enhanced, professional-grade camera systems. Its website promotes the **Opal Tadpole** as "the smallest webcam ever built," equipped with a mirrorless Sony IMX582 RS sensor, an f/1.8 six-element glass lens, and a "category-first directional microphone" designed to capture only what the camera sees. The Tadpole is advertised as a portable, laptop-dedicated camera system with a capacitive USB-C "Tap to Mute" button and a premium woven cable.

26. Defendant also markets the **Opal C1** as "the first professional camera," priced at $299, and advertised as a creator-grade webcam built exclusively for Mac computers. The C1 page emphasizes its professional imaging capabilities, its compatibility with the Opal Composer software, and its intended use for high-quality video capture.

27. Defendant's **Opal Composer** software is promoted as "the magic behind the camera," offering professional-grade image controls, color adjustments, background segmentation, video recording, and on-screen timers. Composer is required to access the full functionality of Opal's cameras and is marketed as the essential companion tool for creators.

28. Between **February 11, 2026,** and **April 18, 2026**, Ms. Powell attempted on multiple occasions to access Defendant's website using NVDA screen-reading software in order to evaluate and purchase the Opal C1 and Opal Tadpole, download the Opal Composer software, and review the Tadpole Comparison Page to understand the differences between Opal's products and competing

models. Her objectives were concrete, personal, and directly tied to her grant-funded project.

29. On **February 11, 2026**, Ms. Powell attempted to access the **Opal Tadpole** product page. The page contains extensive visual content, including product images, technical specifications, marketing banners, and interactive elements. However, the page lacked meaningful alternative text for key images, contained unlabeled buttons, and relied heavily on mouse-dependent interactions. As a result, NVDA was unable to describe the Tadpole's features, including its Sony IMX582 RS sensor, directional VisiMic microphone, and capacitive "Tap to Mute" button.

30. The Tadpole page also includes multiple sections with dense technical specifications—such as lens structure, sensor model, microphone characteristics, and size/weight details—that were not programmatically determinable. NVDA announced these sections as unlabeled blocks or skipped them entirely, preventing Ms. Powell from accessing essential product information. The absence of semantic structure and proper labeling rendered the page unusable for blind consumers.

31. On **February 12, 2026**, Ms. Powell attempted to access the **Opal Composer** page to determine whether the software was compatible with her intended workflow. The Composer page contains numerous interactive controls, sliders, color adjustments, and video preview elements. However, these controls were unlabeled or improperly labeled, causing NVDA to announce them as "button," "graphic," or "unlabeled control," without context. Ms. Powell was unable to determine how to adjust exposure, white balance, hue, saturation, or background segmentation.

32. The Composer page also includes dynamic widgets, stickers, timers, and video recording tools that were inaccessible to screen-reading software. The lack of ARIA labeling and programmatic determinability prevented Ms. Powell from understanding the software's capabilities or determining whether it met the requirements of her grant-funded project.

33. On **March 5, 2026**, Ms. Powell attempted to access the **Opal C1** product page. The

page prominently displays the C1's price, compatibility limitations ("C1 is built exclusively for Macs"), and purchasing options. However, key elements—including the "Choose your finish" selector, the "Checkout" button, and the product availability indicators ("Sold out")—were unlabeled or inaccessible. NVDA was unable to announce the product's status, pricing, or purchasing options.

34. The C1 page also contains FAQ sections regarding compatibility, return policies, and software requirements. These sections were structured as collapsible elements that were not keyboard-navigable and lacked proper ARIA attributes, preventing Ms. Powell from accessing critical information about the device's functionality and limitations.

35. On **April 18, 2026**, Ms. Powell made a final attempt to access the Tadpole Comparison Page to evaluate the differences between Opal's products and competing models. The page contained unlabeled comparison tables, inaccessible graphics, and interactive elements that NVDA could not interpret. Ms. Powell was unable to compare field-of-view specifications, microphone characteristics, or image quality metrics.

36. Across all pages, Ms. Powell encountered additional barriers including missing alternative text, empty links, empty buttons, invalid language attributes, skipped heading levels, broken ARIA references, and autoplaying videos without controls. These barriers collectively prevented her from navigating the pages, understanding the structure of the content, accessing product details, or completing a purchase.

37. As a result of these barriers, Ms. Powell was denied the full and equal enjoyment of Defendant's website and was unable to purchase the equipment necessary for her grant-funded project. Because Opal's products are unique in their design, features, and intended use, Ms. Powell could not obtain the same equipment elsewhere in comparable form.

38. Ms. Powell remains highly interested in purchasing Opal's products and intends to

return to the website as soon as it is made accessible. However, the persistent barriers she encountered deter her from attempting to use the website again until it is remediated. Her injury is ongoing because Defendant continues to operate an inaccessible website without a policy or plan to ensure accessibility.

## NATURE OF ACTION

39. The internet is an essential tool for modern life. It is a primary means by which consumers shop, communicate, learn, work, and access goods and services. For blind and visually impaired individuals, equal access to websites is not a convenience — it is a civil right. When digital platforms are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence, autonomy, and equal participation that sighted users take for granted.

40. Blind and visually impaired individuals access websites using screen-reading software, which converts digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. When websites lack meaningful alternative text for images, contain unlabeled buttons or links, rely on mouse-only interactions, use improper heading structure, or contain broken ARIA references, blind users cannot navigate, understand, or interact with the website.

41. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

42. Congress enacted the Americans with Disabilities Act to eliminate discrimination

against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. The ADA's protections extend to digital spaces. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that businesses must ensure that their online services are accessible to individuals with disabilities, including blind and visually impaired users who rely on screen-reading technology.

43. Defendant **Opal Camera, Inc.** owns and operates the commercial website www.opalcamera.com, through which it markets, displays, and sells AI-enhanced camera equipment and distributes the Opal Composer software to consumers nationwide. Opal's business model is built around providing professional-grade creator tools — including the Opal C1, Opal Tadpole, and the Composer software — that require users to access detailed product descriptions, technical specifications, comparison materials, and software downloads online.

44. Plaintiff attempted to access Defendant's website on multiple occasions to evaluate and purchase the Opal C1 and Opal Tadpole, download the Opal Composer software, and review the Tadpole Comparison Page. These items and software tools were uniquely suited to her grant-funded project and her professional background in digital media production. Plaintiff's objectives were concrete, personal, and time-sensitive.

45. However, due to pervasive accessibility barriers — including missing alternative text, empty buttons, empty links, broken ARIA references, invalid language attributes, inaccessible PDFs, skipped heading levels, and autoplaying videos without controls — Plaintiff was unable to independently review product descriptions, technical specifications, software features, pricing, or purchase options necessary to complete a transaction.

46. Defendant's failure to design, construct, maintain, and operate its website in a

manner compatible with screen-reading technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible website denies blind consumers equal access to the goods, services, and software it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

47. Plaintiff brings this action to enforce her civil rights and to secure injunctive relief requiring Defendant to adopt and implement policies, practices, and procedures that will ensure that its website becomes and remains accessible to blind and visually impaired individuals. Plaintiff remains highly interested in Purchasing Opal's products and intends to return to the website as soon as it is made accessible. Without remediation, plaintiff and other blind consumers will continue to be excluded from equal participation independence online marketplace.

**CLASS ACTION ALLEGATIONS**

48. Plaintiff brings this action on behalf of herself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of all legally blind individuals in the United States who have attempted to access Defendant's website and, as a result of Defendant's failure to design, construct, and maintain the website in an accessible manner, were denied equal access to the goods, services, software, and information offered thereon

49. Plaintiff also seeks certification of a New York subclass consisting of all legally blind individuals residing in the State of New York who have attempted to access Defendant's website and were denied equal access to the goods, services, software, and information offered thereon.

50. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to Plaintiff but is believed to be in the thousands, given the prevalence of blindness and visual impairment in the United States and the widespread use of Defendant's website by consumers seeking to purchase camera equipment

and download software.

51. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- ☐ Whether Defendant's website contains barriers that prevent blind and visually impaired individuals from accessing its content using screen-reading software;
- ☐ Whether Defendant's failure to make its website accessible violates Title III of the ADA;
- ☐ Whether Defendant's conduct violates the New York State Human Rights Law;
- ☐ Whether Defendant's conduct violates the New York City Human Rights Law;
- ☐ Whether Defendant has adopted adequate policies and practices to ensure ongoing website accessibility; and
- ☐ Whether injunctive relief is warranted to require Defendant to make its website fully accessible to blind and visually impaired individuals.

52. Plaintiff's claims are typical of the claims of the members of the Class and Subclass because Plaintiff, like all Class members, is legally blind, attempted to access Defendant's website using screen-reading software, and was denied equal access due to the same or similar accessibility barriers. Plaintiff's injuries are typical of those sustained by the Class and Subclass, and Plaintiff seeks the same injunctive relief on behalf of all members.

53. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has no interests that are antagonistic to the interests of the Class or Subclass, and Plaintiff is committed to vigorously prosecuting this action. Plaintiff has retained counsel experienced in disability rights litigation, class actions, and federal civil rights enforcement.

54. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole.

Defendant continues to operate an inaccessible website without a policy or plan to ensure accessibility, thereby subjecting all blind and visually impaired individuals to the same discriminatory barriers.

55. Certification under Rule 23(b)(2) is appropriate because Defendant has acted and continues to act in a manner that is generally applicable to the Class and Subclass by maintaining a website that is inaccessible to blind and visually impaired individuals. The relief sought by Plaintiff — including injunctive relief requiring Defendant to make its website accessible — will benefit all members of the Class and Subclass.

## FIRST CAUSE OF ACTION
### Violation of Title III of the Americans with Disabilities Act
### (42 U.S.C. § 12181 et seq.)

56. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

57. Defendant **Opal Camera, Inc.** owns, operates, and controls the commercial website www.opalcamera.com, which constitutes a service, sales platform, and software-distribution channel offered to the general public. As such, Defendant is a "public accommodation" within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7).

58. Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. § 12182(a).

59. Defendant has violated Title III by failing to design, construct, maintain, and operate its website in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's website contains numerous barriers that prevent blind users from accessing essential content, including missing alternative text, empty buttons, empty links, broken ARIA references, invalid language attributes, inaccessible PDFs, skipped heading levels, and autoplaying videos without controls.

60. These barriers deny blind consumers equal access to Defendant's goods, services, and software, including the ability to review product descriptions, evaluate technical specifications, download the Opal Composer software, compare models, and complete purchases.

61. Defendant's conduct constitutes discrimination under 42 U.S.C. § 12182(b)(2)(A)(ii) because it has failed to make reasonable modifications in policies, practices, or procedures necessary to afford equal access to individuals with disabilities.

62. Defendant's conduct also violates 42 U.S.C. § 12182(b)(2)(A)(iii) because it has failed to take steps necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently due to the absence of auxiliary aids and services.

63. Defendant's ongoing failure to make its website accessible constitutes a continuing violation of the ADA.

64. Plaintiff seeks injunctive relief requiring Defendant to take all steps necessary to bring its website into full compliance with the ADA and to adopt policies to ensure ongoing accessibility.

## SECOND CAUSE OF ACTION

**Violation of the New York State Human Rights Law**
**(N.Y. Exec. Law § 290 et seq.)**

65. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

66. The New York State Human Rights Law ("NYSHRL") prohibits discrimination on the basis of disability in all places of public accommodation. N.Y. Exec. Law §§ 292(9), 296(2)(a).

67. Defendant's website is a sales and service platform that constitutes a place of public accommodation under the NYSHRL.

68. Defendant has violated the NYSHRL by denying Plaintiff and other blind consumers equal access to its goods, services, and software due to the presence of pervasive accessibility

barriers on its website

69. Defendant's conduct constitutes unlawful discrimination because it subjects blind individuals to inferior access, unequal treatment, and exclusion from the digital marketplace.

70. Defendant's failure to make its website accessible is a direct violation of N.Y. Exec. Law § 296(2)(a), which requires public accommodations to provide equal access to individuals with disabilities.

## THIRD CAUSE OF ACTION
**Violation of the New York City Human Rights Law**
**(N.Y.C. Admin. Code § 8-101 et seq.)**

71. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

72. The New York City Human Rights Law ("NYCHRL") provides broad and independent protections against discrimination on the basis of disability. N.Y.C. Admin. Code §§ 8-102, 8-107(4).

73. Defendant's website is a sales and service platform that constitutes a place of public accommodation under the NYCHRL.

74. Defendant has violated the NYCHRL by denying Plaintiff and other blind consumers equal access to its goods, services, and software due to the presence of accessibility barriers that prevent blind users from navigating, understanding, and interacting with the website.

75. The NYCHRL requires public accommodations to provide equal access and prohibits any practice that results in unequal treatment or disparate impact on individuals with disabilities.

76. Defendant's conduct violates the NYCHRL because it denies blind consumers the ability to independently browse, evaluate, and purchase Defendant's products and to download the Opal Composer software.

77. Plaintiff seeks injunctive relief and all other remedies available under the NYCHRL, which must be construed liberally in favor of civil rights plaintiffs.

**<u>FOURTH CAUSE OF ACTION</u>**
**Violation of the New York Civil Rights Law**
**(N.Y. Civ. Rights Law §§ 40–41)**

78. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

79. The New York Civil Rights Law §§ 40 and 41 guarantee all persons, regardless of disability, the equal protection of the laws and the full and equal enjoyment of any place of public accommodation.

80. Defendant's website is a place of public accommodation within the meaning of the Civil Rights Law.

81. By operating an inaccessible website that denies blind consumers equal access to its goods, services, and software, Defendant has violated Plaintiff's rights under N.Y. Civ. Rights Law §§ 40 and 41.

82. Defendant's conduct constitutes a denial of equal access and equal enjoyment of its digital services.

83. Plaintiff is entitled to injunctive relief and statutory damages as provided by law.

**<u>FIFTH CAUSE OF ACTION</u>**
**Declaratory Judgment**
**(28 U.S.C. §§ 2201–2202)**

84. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

85. An actual controversy exists between the parties regarding Defendant's ongoing operation of an inaccessible website and its obligations under federal, state, and local disability-rights laws.

86. Plaintiff seeks a declaration that Defendant's website, in its current form, violates Title III of the ADA, the NYSHRL, the NYCHRL, and the New York Civil Rights Law.

87. Plaintiff further seeks a declaration that Defendant must bring its website into compliance with WCAG 2.1 AA or an equivalent standard and must adopt policies to ensure ongoing accessibility.

88. Declaratory relief is necessary to resolve the legal rights and obligations of the parties and to prevent future violations.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.opalcamera.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
April 22, 2026

Respectfully submitted,
JOSEPH & NORINSBERG LLP
By: */s/ Robert L. Schonfeld*
Robert L. Schonfeld, Esq.
Attorneys for Plaintiff
825 Third Avenue
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com